IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RIKI O'HAILPIN, NINA ARIZUMI, ROBERT ESPINOSA, ERWIN YOUNG, PUANANI BADIANG, SABRINA FRANKS, and RONALD LUM, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.,<br><br>Defendants. | CIVIL NO. 22-00007 JAO-KJM<br><br>ORDER (1) DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND (2) GRANTING DEFENDANTS' APPLICATION TO STRIKE DECLARATION OF FREDERICK REED BATES, II |

**ORDER (1) DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND (2) GRANTING DEFENDANTS' APPLICATION TO STRIKE DECLARATION OF FREDERICK REED BATES, II**

This putative class action concerns Defendant Hawaiian Airlines, Inc.'s[1]

denial of religious and/or medical exemptions from its COVID-19 vaccine policy,

which requires employees to get vaccinated or face termination.  Plaintiffs Riki

O'Hailpin ("O'Hailpin"), Nina Arizumi ("Arizumi"), Robert Espinosa

("Espinosa"), Erwin Young ("Young"), Puanani Badiang ("Badiang"), Sabrina

---

[1]  Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings are collectively referred to as Hawaiian.

Franks ("Franks"), and Ronald Lum ("Lum") (collectively, "Plaintiffs") allege that

Hawaiian's denial of their requests for medical and/or religious exemptions was

discriminatory and retaliatory, in violation of the Americans with Disabilities Act

("ADA") and Title VII.  Plaintiffs request a temporary restraining order ("TRO")

and an order to show cause why a preliminary injunction should not issue.  ECF

No. 17.  Hawaiian moves to strike the Declaration of Frederick Reed Bates, II,

which is attached to Plaintiffs' Reply.  ECF No. 36.

For the following reasons, the Court DENIES Plaintiffs' Application for

Temporary Restraining Order and for an Order to Show Cause Why Preliminary

Injunction Should Not Issue, and GRANTS Hawaiian's Application to Strike the

Declaration of Frederick Reed Bates, II, Attached to Plaintiffs' Reply Brief in

Support of Application for Temporary Restraining Order and Preliminary

Injunction.

## BACKGROUND

I.    **Factual History**

A.    **Hawaiian's Policies**

On August 9, 2021, Hawaiian informed its employees that effective

November 1, 2021, it would require all U.S.-based employees to be vaccinated

against COVID-19, *i.e.*, employees had to have received the full dosage of the

Pfizer, Moderna, or Janssen vaccine unless they had a reasonable accommodation

for a disability under the ADA or a sincerely held religious belief that conflicted with receiving the vaccine.  ECF No. 31-1 ¶ 5.  Hawaiian published its vaccine policy on September 17, 2021.  ECF No. 1 ¶ 27.  Hawaiian then implemented a Transition Period Testing Program ("TPTP"), which enabled employees who remained unvaccinated as of November 1, 2021 to continue working through January 4, 2022, subject to temporary COVID-19 testing procedures.  ECF No. 31-1 ¶¶ 7–8.  The TPTP was designed in part to give unvaccinated employees time to decide whether to be vaccinated.  *Id.* ¶ 8.  It also offered a 12-month unpaid leave of absence ("LOA"), beginning January 5, 2022, for employees who declined to get vaccinated.  *Id.*  Employees had to apply for participation in the TPTP by October 24, 2021.  *Id.*

Hawaiian permitted employees to request reasonable accommodations ("RA request") based on disabilities or sincerely held religious beliefs by October 1, 2021, though requests were accepted beyond that.  *Id.* ¶¶ 6–7.  Due to the high volume of religious accommodation requests — 500 total — Hawaiian was unable to process all RA requests by the November 1, 2021 vaccination deadline.  *Id.* ¶ 9.  To avoid terminating the employees who did not receive a response regarding their RA request by November 1, 2021, however, Hawaiian auto-enrolled them in TPTP as a temporary accommodation.  *Id.*  For those employees whose RA requests were

3

denied, Hawaiian reopened the option to request an LOA on November 19, 2021. *Id.* ¶ 16.

As of January 1, 2022, 95% of Hawaiian's employees were vaccinated. *Id.* ¶ 12. Several hundred employees whose RA requests were denied remain unvaccinated. *Id.* ¶ 16. The employees who received exemptions are not guest-facing and can socially distance and wear masks. *Id.*

By January 5, 2022, unvaccinated employees without an approved accommodation or exemption, or who were not on an LOA, were subject to termination proceedings. *Id.* ¶ 11.

Unvaccinated employees who were granted an LOA maintain health insurance through the end of the month they begin their leave. *Id.* ¶ 16. Unvaccinated union employees who did not request an LOA are in held out of service ("HOS") status while they await hearings for their union grievances, and they maintain health benefits. *Id.* ¶ 17. Unvaccinated union employees who are members of the Airline Pilots Association and the Association of Flight Attendants additionally maintain travel benefits and pay. *Id.* Non-union unvaccinated employees without an LOA were separated as of January 5, 2022. *Id.*

**B.   Plaintiffs**[2]

**1.   O'Hailpin**

O'Hailpin is a flight attendant who has worked for Hawaiian for approximately 24 years.  ECF No. 1 ¶ 75.  She believes that her body is a "temple of the Holy Spirit and that God had directed her not to take the vaccine" and that the "vaccines were developed using aborted fetal tissue."  *Id.* ¶ 78.  O'Hailpin also suffers from antiphospholipid syndrome, which substantially limits her reproductive system.  *Id.* ¶ 83.  Her doctors counseled against getting vaccinated due to her condition and risk of blood clots.  *Id.*  She submitted RA requests for her religious beliefs and for her medical condition on October 1, 2021 and October 16, 2021, respectively.  *Id.* ¶¶ 78, 82.  She received denials of her RA requests on October 13, 2021 and November 2, 2021.  *Id.* ¶ 80; ECF No. 1-6 ¶ 19.

**2.   Arizumi**

Arizumi has worked for Hawaiian as a flight attendant for approximately 11 years.  ECF No. 1 ¶ 90.  On September 29, 2021, she submitted an RA request for her religious beliefs — a sect of Shintoism adhering to the view that the vaccine

---

[2]  For the purpose of this section, the Court provides Plaintiffs' backgrounds as described in the Complaint, even though their statuses have since changed.  At the hearing, Plaintiffs' counsel informed the Court that Badiang retired; Young was terminated; Arizumi and Franks had termination hearings and it is expected that they will be terminated by the end of the week; and O'Hailpin, Lum, and Espinosa are on LOA.

"would impurify her body and permanently disable her spirit." *Id.* ¶ 92.  Hawaiian denied her request on October 14, 2021.  *Id.* ¶ 93.  On September 30, 2021, Arizumi submitted another RA request based on her medical condition — mitral valve prolapse.  *Id.* ¶ 97.  She claims that her doctor strongly recommended that she not get vaccinated.  *Id.*  Hawaiian denied her RA request for medical exemption on November 4, 2021.  *Id.* ¶ 99.

### 3.   Espinosa

Espinosa has been a First Officer with Hawaiian for 10 years.  *Id.* ¶ 106.  He sought an RA request for religious exemption on September 29, 2021.  *Id.* ¶ 108.  He believes that his body is a temple of the Holy Spirit.  *Id.*  He articulated three reasons in his RA request for objecting to the vaccine — (1) "it would be ungrateful for God's blessing of natural immunity and a healthy immune system"; (2) the vaccines use or were tested on fetal stem cell lines, which desecrates "the sacredness of life"; and (3) through prayer, God showed him that he should avoid the vaccines because not everyone has been truthful about them.  *Id.*  As an ordained pastor, Espinosa is committed to avoiding anything that "violates the will of God or goes against His Word."  *Id.*  Hawaiian denied his RA request on October 14, 2021.  ECF No 1-4 ¶ 11.

### 4.    Young

Young, a lead aircraft technician, has worked for Hawaiian for almost 10 years.  ECF No. 1 ¶ 117.  He submitted an RA request on September 30, 2021 for his religious beliefs — his body is a temple of the Holy Spirit, and God directed him not to take the vaccine.  *Id.* ¶¶ 119–20.  He believes that using anything derived from abortion is sinful, so his opposition to getting vaccinated strengthened when he learned that vaccines were developed using aborted fetal tissue.  *Id.* ¶ 120.

On November 5, 2021, Hawaiian's representatives met with Young to discuss his RA request.  *Id.* ¶ 121.  They asked if he could be encouraged to get vaccinated and whether the vaccine contained any ingredients that prevented him from taking it.  *Id.*  Hawaiian denied the request on December 16, 2021.  *Id.* ¶ 122.

### 5.    Badiang

Badiang has worked for Hawaiian for 20 years in different capacities, most recently as a corporate training manager.  *Id.* ¶ 129.  On September 28, 2021, she submitted an RA request based on her religious beliefs.  *Id.* ¶ 131.  As a devout Christian, Badiang claims that she cannot take part in any process relating to or using aborted cells, including vaccination.  *Id.* ¶ 132.  On November 1, 2021, Hawaiian's team interviewed Badiang about her request, asking for her church's members' views about the vaccine and whether she could be persuaded to get

vaccinated with the current vaccines or a new version in the future.  *Id.* ¶ 133.  On

December 14, 2021, she received a denial.  *Id.* ¶ 135.

### 6.    Franks

Franks is a customer service agent who has been in Hawaiian's employ for

nearly six years.  *Id.* ¶ 143.  On October 1, 2021, she submitted an RA request

based on her religious belief that her body is the temple of the Holy Spirit, so she

prays and seeks counsel from God about anything entering her body.  *Id.* ¶ 145.

Hawaiian met with her on October 20, 2021 and asked whether she previously took

vaccines and whether any information about the vaccines would change her mind.

*Id.* ¶ 147.  Hawaiian denied Franks's request on December 13, 2021.  *Id.* ¶ 148.

### 7.    Lum

Lum, a Captain, has worked for Hawaiian for 37 years.  *Id.* ¶ 157;

ECF No. 1-5 ¶ 2.  On October 10, 2021, he submitted an RA request based on his

coronary artery disease and his doctor's recommendation against getting

vaccinated.  ECF No. 1 ¶ 160.  Hawaiian denied the request on December 7, 2021.

*Id.* ¶ 161.  Lum also submitted an RA request on October 25, 2021 for his religious

beliefs that his body is the temple of the Holy Spirit so it would dishonor God to

get vaccinated.  *Id.* ¶ 162.  On December 17, 2021, Hawaiian sent Lum a denial.

*Id.* ¶ 163.

## II.    Procedural History

Plaintiffs initiated this action on January 5, 2022, asserting the following

claims:

- Counts I and II:   religious discrimination in violation of Title VII —
  failure to accommodate and retaliation (all Plaintiffs)

- Counts III and IV:  disability discrimination in violation of the ADA —
  failure to accommodate and retaliation (O'Hailpin, Arizumi, and Lum)

ECF No. 1 at 53–59.

On January 10, 2022, Plaintiffs filed an Application for Temporary

Restraining Order and for Order to Show Cause Why Preliminary Injunction

Should Not Issue ("Application for TRO").  ECF No. 17.  Hawaiian filed an

Opposition on January 21, 2022.  ECF No. 31.  Plaintiffs filed a Reply on January

25, 2022.  ECF No. 33.

On January 28, 2022, Hawaiian filed an Application to Strike the

Declaration of Frederick Reed Bates, II, Attached to Plaintiffs' Reply Brief in

Support of Application for Temporary Restraining Order and Preliminary

Injunction ("Application to Strike").  ECF No. 36.  Plaintiffs filed an Opposition

on January 31, 2022.  ECF No. 37.

The Court heard these matters on February 1, 2022.  ECF No. 39.

## LEGAL STANDARD

The standards governing temporary restraining orders ("TRO") and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted); *see Kaiser Found. Health Plan, Inc. v. Queen's Med. Ctr., Inc.*, 423 F. Supp. 3d 947, 951 n.1 (D. Haw. 2019).

FRCP 65(a) allows courts to issue preliminary injunctions. "[The] purpose of a preliminary injunction . . . is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (alterations in original) (internal quotation marks and citation omitted).

To obtain preliminary injunctive relief, a plaintiff must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

10

2011).  The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right."  *Winter*, 555 U.S. at 22, 24 (citations omitted).  "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction."  *Id.* at 24 (citations omitted).

## DISCUSSION

Plaintiffs request a TRO restraining and enjoining Hawaiian from enforcing or otherwise requiring compliance with its vaccine policy as a term of employment.  ECF No. 17 at 2.  They also ask the Court to issue an order to show cause why a preliminary injunction should not issue.  *Id.*

## I.    Hawaiian's Application To Strike

Hawaiian moves to strike or disregard the Declaration of Frederick Reed Bates, II ("Bates"), ECF No. 33-1, which is attached to the Reply, for violating Local Rule 7.2.  ECF No. 36.  Plaintiffs bear the burden of demonstrating

11

entitlement to a TRO, and Bates's Declaration — or at least the bulk of it[3] — could have and should have been submitted with the Application for TRO.  Reserving the Declaration for submission with the Reply unfairly deprived Hawaiian of the opportunity to respond.  In October 2021, Bates provided a similar declaration in *Sambrano v. United Airlines*, a case in the Northern District of Texas in which Plaintiffs' pro hac vice counsel represents the plaintiffs.  And the Application for TRO raised nearly all of the arguments supported by the Declaration, so there was no justification for withholding Bates's Declaration until the Reply.  Accordingly, the Court GRANTS Hawaiian's Application and strikes Bates's Declaration.  Even if Bates's Declaration were allowed, it would not alter the disposition of the Application for TRO because, among other things, Bates's qualifications as an expert in this subject matter are questionable.  His professional background is in the field of airline security, and it appears he managed (at most) 104 employees at once.  *See* ECF No. 33-1 at 6–15.

//

//

//

//

---

[3]  The portions directly addressing Robin Kobayashi's Declaration, ECF No. 31-1, which was submitted with the Opposition, were reasonably submitted with the Reply.

## II.     Application For TRO

### A.     Plaintiffs Are Not Entitled To Injunctive Relief

#### 1.     Irreparable Harm

"A plaintiff seeking preliminary relief must 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (citation omitted).  "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).  As a prerequisite to injunctive relief, "a plaintiff must *demonstrate* immediate threatened injury"; a speculative injury is not irreparable. *Id.* (citations omitted).  "Irreparable harm is . . . harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted).

In the employment context, discharge and its associated consequences do not ordinarily constitute irreparable harm, no matter how "severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). "[E]xternal factors common to most discharged employees," such as insufficient savings or difficulties obtaining other employment, do "not support a finding of irreparable injury." *Id.*  Injunctive relief should be reserved for "genuinely extraordinary situation[s]," not awarded in routine cases. *Id.* (citation omitted).

13

This is because "[m]ere injuries, however substantial, in terms of money, time and energy . . . are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Id.* at 90 (footnote and internal quotation marks omitted).

In cases involving vaccine policies, courts have consistently found that a loss of employment is not irreparable harm.  *See Bauer v. Summey*, __ F. Supp. 3d __, 2021 WL 4900922, at *18 (D.S.C. Oct. 21, 2021) (concluding that loss of employment is not "an irreparable injury because it is fully compensable by monetary damages" (citations omitted)); *Mass. Corr. Officers Federated Union v. Baker*, __ F. Supp. 3d __, 2021 WL 4822154, at *7 (D. Mass. Oct. 15, 2021) (stating that the harm of employment loss is not irreparable for the purposes of an injunction); *Beckerich v. St. Elizabeth Med. Ctr.*, __ F. Supp. 3d __, 2021 WL 4398027, at *6 (E.D. Ky. Sept. 24, 2021) (finding that loss of employment is not an irreparable injury because it can be compensated with monetary damages, and "wrongful termination claims exist for that very reason — whether brought under the ADA, Title VII, or some other state or federal law"); *Valdez v. Grisham*, __ F. Supp. 3d __, 2021 WL 4145746, at *12 (D.N.M. Sept. 13, 2021) (concluding that being terminated or prevented from working as a nurse is not irreparable harm).

Plaintiffs characterize the following harms as irreparable.  While the Court recognizes the deep significance of the harms to Plaintiffs, because these harms are common to loss of employment cases and are not extraordinary, or are reparable, injunctive relief is unwarranted.

### a.    Chilling Effect Of Retaliatory Actions

Plaintiffs first argue that a company's retaliatory actions against employees who exercise Title VII rights constitute irreparable harm.  ECF No. 17-1 at 26.  Specifically, Plaintiffs posit that Hawaiian's elimination of dissenting voices will deter others from enforcing their rights and providing testimony against Hawaiian.  *Id.* at 27.  So, at least as it pertains to this argument, the actual alleged harm is not the retaliatory action itself, but the resulting chilling effect.

Allegations of retaliation for the exercise of protected activity may constitute irreparable harm because such retaliatory action "carries with it the risk that employees may be deterred from engaging in legitimate conduct." *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 938–39 (9th Cir. 1987) (citations omitted).

As an initial matter, Plaintiffs attempt to frame the adverse employment actions as retaliatory, claiming that the adverse actions occurred *because* Plaintiffs sought accommodations.  ECF No. 17-1 at 27; ECF No. 33 at 18.  The record suggests otherwise.  Hawaiian implemented the vaccination policy as a condition of employment and from the outset, employees were required to be fully

15

vaccinated by a specified date unless they had a reasonable accommodation for a disability or a sincerely held religious belief.[4]  ECF No. 31-1 ¶ 5.  Non-compliance with the vaccination policy — not the submission of RA requests — resulted in adverse employment actions.  ECF No. 31-1 ¶¶ 11, 16; ECF No. 31 at 42 n.15.  Therefore, there is no irreparable harm based on retaliatory conduct.

Moreover, even if Hawaiian retaliated against Plaintiffs for engaging in protected activity, Plaintiffs have not shown irreparable harm.  Plaintiffs contend

---

[4]  Plaintiffs claim that Hawaiian's reasonable accommodation policy indicates that Hawaiian "would provide reasonable accommodations that would allow employees 'to perform the essential functions of [their] position[s]' and that they would be able to 'return to work' with an accommodation."  ECF No. 33 at 18 (alterations in original) (quoting ECF No. 31-1 at 4).  In actuality, the relevant portions of the policy state:

- Although we cannot guarantee a particular accommodation, we will work with you to determine which accommodation will help you to return to work and is reasonable.

- If a reasonable accommodation is not available without posing a direct threat of harm to your own safety or that of others, such as your co-workers and guests, we may require you to complete a medical examination so we can determine if you can safely return to work with or without a reasonable accommodation.

- We also endeavor to reasonably accommodate sincerely held religious beliefs and practices so that you are able to perform the essential functions of your position in a manner that does not create an undue hardship.

ECF No. 31-1 ¶ 6.  None of these provisions guarantee accommodations or a return to work.

that other employees who felt compelled to comply with the vaccine policy

because they lacked a basis for exemption or were denied an exemption "will now

be less likely to exercise their rights or testify against the company."  ECF No. 33

at 18.  This is pure conjecture, and is unsupported by the record.

### b.    Loss Of Health Insurance

Next, Plaintiffs contend that O'Hailpin, Lum, and Arizumi will suffer

immediate harm if they lose their health insurance.  ECF No. 17-1 at 27.  Plaintiffs

highlight O'Hailpin's circumstances to illustrate the anticipated harm.  O'Hailpin

purportedly intends to use her health insurance for in-vitro fertilization ("IVF") this

spring and claims that the loss of insurance will deprive her of the opportunity to

have a child through IVF.[5]  *Id.*  However, four of seven Plaintiffs are in HOS

---

[5]  Plaintiffs accuse Hawaiian of ignoring O'Hailpin's injury, *see* ECF No. 33 at 18, but Hawaiian's arguments regarding health insurance necessarily pertain to O'Hailpin.  ECF No. 31 at 36 & n.13.  The Court is sympathetic to O'Hailpin's situation, but Plaintiffs overstated the harm she could suffer as a result of Hawaiian's actions, *i.e.*, that Hawaiian's actions are precluding her from having a child.  And the harm is speculative.  In any event, even if the Court presumes that these actions are violative, any correlation between them and O'Hailpin's anticipated injuries is simply too attenuated.  The salient issue is whether the loss of health insurance amounts to irreparable harm under the circumstances.  It does not.  At the hearing, Plaintiffs' counsel argued for the first time that O'Hailpin cannot afford health insurance without income.  She has made no showing beyond counsel's conclusory argument.  Hawaiian's counsel countered that as a member of the flight attendants' union, O'Hailpin continues to receive pay and travel benefits.  Regardless of how long she continues to receive benefits, the law is clear that loss of health insurance, as a consequence of the loss of employment, is a reparable harm.

status, so they continue to receive health insurance.  ECF No. 31-1 ¶¶ 17, 27.  And

neither they nor the remaining Plaintiffs will suffer irreparable harm even if they

lose their health insurance benefits because they can continue coverage under the

Consolidated Omnibus Budget Reconciliation Act ("COBRA") for 18 months or

obtain private health insurance.  ECF No. 31-1 ¶ 27; *see also Johnson v. Brown*, __

F. Supp. 3d __, 2021 WL 4846060, at *24 (D. Or. Oct. 18, 2021); *Together Emps.

v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 8 (1st Cir. 2021) ("*Together II*") (finding

that loss of health insurance is not irreparable harm because it "fall[s] within the

category of 'external factors common to most discharged employees'"); *Cooper v.

TWA Airlines, LLC*, 274 F. Supp. 2d 231, 241 (E.D.N.Y. 2003) (rejecting the

plaintiffs' argument that the loss of medical benefits will cause irreparable harm

because the plaintiffs could secure medical coverage under COBRA).  Thus, any

harm would be financially compensable.  *See Johnson*, __ F. Supp. 3d at __, 2021

WL 4846060, at *24.

### c.   Crisis Of Conscience

Plaintiffs also accuse Hawaiian of placing them in a lose-lose situation —

get vaccinated "at the expense of their conscience and health, or give up their

livelihood."  ECF No. 17-1 at 28.  This argument has been rejected by other courts

for good reason.  Hawaiian did not force Plaintiffs or any other employees to get

vaccinated.  *See Anderson v. United Airlines, Inc.*, Case No. 3:21-CV-1050-TJC-

LLL, 2021 WL 6337144, at *7 (M.D. Fla. Dec. 30, 2021) (noting that United

Airlines's policy did not force anyone to get a vaccine).  In fact, Plaintiffs' pro hac

vice counsel presented a virtually identical argument in *Sambrano v. United*

*Airlines, Inc.*, __ F. Supp. 3d __, 2021 WL 5176691, at *4 (N.D. Tex. Nov. 8,

2021) — "United has put its religious and disabled workers in an impossible

position — take the COVID-19 vaccine, at the expense of their religious beliefs or

face indefinite unpaid leave." *Id.* (internal quotation marks, brackets, and citation

omitted).  The *Sambrano* court aptly reasoned:

> This argument . . . conflates the potential harm arising
> from United's accommodation policy with the personal difficulty
> of deciding to decline the vaccine.  United exempted Plaintiffs
> from the vaccine mandate; Plaintiffs were not required to violate
> their religious beliefs.  United's employees claimed they faced
> an impossible choice: get the vaccine or endure unpaid leave.
> But they chose the latter.  Their dispute thus centers on United's
> response to their choice.

*Id.*[6]  In this case, all of Hawaiian's employees were subject to the same vaccination

requirement as a condition of their employment.  A small percentage of employees,

including Plaintiffs, elected not to receive the vaccination, and so have made a

choice.  *See Together II*, 19 F.4th at 8 ("Moreover, as the deadline for being

---

[6] Notwithstanding their concession that courts have rejected their crisis of
conscience argument, Plaintiffs put stock in the appeal of this issue based on the
*dissenting* position in the Fifth Circuit's denial of an injunction pending appeal.
ECF No. 33 at 19 (citing *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th
Cir. 2021)).

vaccinated has passed, the appellants cannot point to an 'impossible choice' as a special factor here; they have already made their choices." (footnote omitted)). Thus, injunctive relief is not warranted based on this claimed harm.  *See Beckerich*, __ F. Supp. 3d at __, 2021 WL 4398027, at *7 ("Rather, these Plaintiffs are choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice.  Even if they believe the condition or the consequences are wrong, the law affords them an avenue of recourse — and that avenue is not injunctive relief on this record.").

Hawaiian did not coerce Plaintiffs to do anything.  Plaintiffs cite *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021), for the proposition that coercion carried out in violation of federal law causes irreparable harm; that employees are illegally forced to choose "their jobs or their jabs."  ECF No. 17-1 at 28 (brackets omitted).  *BST* is inapposite, however.  There, the plaintiffs challenged the constitutionality of an OSHA rule mandating employees of covered employers to get vaccinated or undergo weekly testing and wear masks.  *See BST*, 17 F.4th at 609–10.  As discussed in the next section, the instant case does not implicate violations of constitutional rights.

### d.   **Constitutional Harm**

Plaintiffs contend that Title VII protects constitutional rights in private employment and that deprivations of constitutional rights are irreparable.  ECF No.

17-1 at 28.  While it is true that "an alleged constitutional infringement will often alone constitute irreparable harm," *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (internal quotation marks and citation omitted), Plaintiffs do not assert constitutional causes of action, nor could they.  As a private company, Hawaiian cannot violate Plaintiffs' constitutional rights because it is not a state actor (and Plaintiff has not even alleged that it is).  *See Together II*, 19 F.4th at 8 ("To the extent the appellants argue that MGB's actions impair their religious liberty rights under the Constitution, that argument fails.  As appellants concede, MGB is not a state actor governed by the First Amendment.  If MGB's actions turn out to be unlawful, they are remediable through money damages."); *Anderson*, __ F. Supp. 3d at __, 2021 WL 6337144, at *8 (finding that United is not a state actor, so it is not governed by First Amendment requirements); *Sambrano*, __ F. Supp. 3d at __, 2021 WL 5176691, at *4–5 (noting that the plaintiffs did not assert any First Amendment violations and that they were not denied the freedom to exercise their religious beliefs); *Beckerich*, __ F. Supp. 3d at __, 2021 WL 4398027, at *3, *6 (explaining that the defendant, a private hospital, is not a state actor so constitutional rights are not at issue).  Accordingly, there are no constitutional infringements that would constitute irreparable harm.

e.      **Additional Harms**

Plaintiffs finally identify miscellaneous harms associated with their loss of employment or LOA:  (1) Lum will be deprived of his retirement flight ceremony in August 2022; (2) Arizumi and Badiang will lose their princess parking; and (3) employees will lose the opportunity to bid for prestigious routes, positions within the flying community, or vacation slots.  ECF No. 17-1 at 29.

The timing of Lum's retirement flight ceremony removes it from the realm of irreparable harm, as it is not an immediate threatened injury.  The princess parking and bids are employment perks or benefits, and they therefore fall into the category of injuries suffered in connection with the loss of employment that are reparable.

Plaintiffs also accuse Hawaiian of causing ongoing harm, including "interpersonal harms" — "pitting employees against each other" and "ripping apart the 'Ohana within the company" — and harm to employees' psychological well-being.  ECF No. 17-1 at 29.  These "interpersonal harms" are unsubstantiated and speculative.  Given the current political and social climate regarding vaccines, it is a stretch for Plaintiffs to impute intracompany strife to the enforcement of the vaccine policy when the alleged discord is more plausibly attributable to Plaintiffs' unvaccinated status.  And, if Plaintiffs have been terminated, placed on an LOA, or

are in HOS status, it is unclear how these workplace harms are an immediate threatened injury.

The Court finds equally unavailing Plaintiffs' argument that the harm to their psychological well-being is irreparable.  In their briefing, Plaintiffs rely exclusively on *Morris v. North Hawaii Community Hospital*, 37 F. Supp. 2d 1181, 1188 (D. Haw. 1999),[7] to support their argument that irreparable harm includes harm to the psychological well-being of a plaintiff.  ECF No. 17-1 at 26, 29; ECF No. 33 at 17 n.5.  *Morris* does not stand for such a broad legal principle.  It concerned the termination of home health care benefits for a quadriplegic.  *See Morris*, 37 F. Supp. 2d at 1182.  The court found that the plaintiff suffered irreparable harm because he could not afford home health care services and he was ineligible for state assistance; a "[l]ack of home health care pose[d] a serious risk to [his] physical and psychological well-being"; and he had no "adequate and speedy remedy at law." *Id.* at 1188.  These types of extenuating circumstances are lacking here.

---

[7]  Plaintiffs accuse Hawaiian of assuming that psychological harm is not irreparable without mentioning *Morris*, which they describe as precedent.  ECF No. 33 at 17 n.5.  District courts are bound by their circuit's precedent; district court orders have no precedential value.  *See Biggs v. Sec'y of the Cal. Dep't of Corr. & Rehab.*, 717 F.3d 678, 689 (9th Cir. 2013) (explaining that courts are bound by circuit precedent under the law-of-the-circuit rule "unless it is 'clearly irreconcilable' with intervening Supreme Court precedent" (citation omitted)).

For the first time, at the hearing, Plaintiffs also pointed to *Chalk v. United States District Court Central District of California*, 840 F.2d 701, 710 (9th Cir. 1988), wherein the Ninth Circuit held that emotional and psychological injury can constitute irreparable harm in extraordinary circumstances. *See id*. at 710.  But the circumstances in *Chalk* are markedly more extreme than those here.  There, the Ninth Circuit concluded that the plaintiff demonstrated irreparable harm because he claimed immediate emotional and psychological injury, not future monetary injury; he had AIDS and "the virus is fatal in all recorded cases"; he was fully qualified and able to return to work though his ability to do so would be affected over time; and a "delay, even if only a few months, pending trial represents precious, productive time irretrievably lost to him." *Id.*  Plaintiffs' bare and conclusory claim that Hawaiian is harming their psychological well-being does not demonstrate an immediate threatened injury, much less constitute the extraordinary circumstances that existed in *Chalk*.

In employment vaccination policy cases, assertions of irreparable harm premised on emotional or psychological harm have been widely rejected.  *See*, *e.g.*, *Together II*, 19 F.4th at 8 (holding that psychological injury from an adverse employment action "does not usually constitute irreparable injury warranting injunctive relief" (internal quotation marks and citation omitted)); *Beckerich*, __ F. Supp. 3d at __, 2021 WL 4398027, at *6 (stating that "emotional injuries

24

stemming from wrongful termination claims are routinely compensated by monetary damages in this Court and in courts across the country"); *Sambrano*, __ F. Supp. 3d at __, 2021 WL 5176691, at *6–7 (rejecting claims that psychological harm is irreparable).

For the aforementioned reasons, Plaintiffs have not established a likelihood of irreparable harm in the absence of preliminary relief.

## 2.  Likelihood Of Success On The Merits

Neither have Plaintiffs established a likelihood of success on the merits. Plaintiffs contend that they are likely to succeed on their claims and that the pendency of their Equal Employment Opportunity Commission ("EEOC") inquiries and charges do not preclude injunctive relief.  ECF No. 17-1 at 12–26. Hawaiian refutes Plaintiffs' ability to succeed on their claims and it argues that Plaintiffs have failed to exhaust administrative remedies.  ECF No. 31 at 18–34.

### a.  Failure To Exhaust Administrative Remedies

"Under Title VII, an aggrieved person wishing to bring a claim against an employer must exhaust administrative remedies by filing a charge with the [EEOC] or a qualifying state agency and receiving a right-to-sue notice."  *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1104 (9th Cir. 2018) (citing 42 U.S.C. § 2000e-5); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974) (identifying prerequisites for instituting a Title VII lawsuit as (1) timely filing a

25

charge of employment discrimination with the EEOC, and (2) receiving and acting upon the notice of the right to sue) (citations omitted).  Exhaustion is also required for ADA claims.  *See Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006).

Here, Plaintiffs have not exhausted their administrative remedies, as they have pending inquiries and charges with the EEOC.  ECF No. 17-1 at 12.  Arizumi signed a charge on November 17, 2021, ECF No. 1-1 ¶ 32; Badiang made an inquiry on December 22, 2021, ECF No. 1-2 ¶ 22; Franks made an inquiry on December 20, 2021, ECF No. 1-3 ¶ 20; Espinosa made an inquiry on December 21, 2021, ECF No. 1-4 ¶ 19; Lum made an inquiry on December 28, 2021, ECF No. 1-5 ¶ 21; O'Hailpin made inquiries in October and November 2021, which are being consolidated into a single charge, ECF No. 1-6 ¶ 31; and Young made an inquiry on December 28, 2021, ECF No. 1-7 ¶ 19.

The exhaustion requirement is mandatory and non-jurisdictional.  *See Fort Bend County v. Davis*, 587 U.S. __, 139 S. Ct. 1843, 1851–52 (2019).  Therefore, failure to comply may result in the dismissal of claims.  *See id.* ("Defendants . . . have good reason promptly to raise an objection that may rid them of the lawsuit filed against them.  A Title VII complainant would be foolhardy consciously to take the risk that the employer would forgo a potentially dispositive defense."); *Vasquez v. Kiewit Infrastructure W., Co.*, CIV. NO. 19-00513 HG-WRP, 2020 WL 2842671, at *3 (D. Haw. June 1, 2020) ("Exhaustion of administrative remedies is

subject to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), not for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." (citations omitted)).

It is axiomatic that Plaintiffs cannot demonstrate a likelihood of success if their claims are subject to dismissal.  *See*, *e.g*, *Donovan v. Vance*, __ F. Supp. 3d __, 2021 WL 5979250, at *7 (E.D. Wash. Dec. 17, 2021) (finding that the plaintiffs could not "demonstrate a likelihood of success on the merits or that there are serious questions going to the merits of those claims" because they failed to exhaust their administrative remedies as to their Title VII and ADA claims); *Barrington v. United Airlines, Inc.*, __ F. Supp. 3d __, 2021 WL 4840855, at *6 (D. Colo. Oct. 14, 2021) (concluding that the plaintiff failed to establish likely success on the merits because she failed to exhaust administrative remedies). Ignoring the governing legal standards, Plaintiffs argue that district courts have *jurisdiction* to grant preliminary injunctive relief before the conclusion of administrative proceedings to maintain the status quo in a "limited class of cases." ECF No. 17-1 at 12 (quoting *Duke v. Langdon*, 695 F.2d 1136, 1137 (9th Cir. 1983)).[8]  The Court questions the applicability of this precedent to the instant facts given that exhaustion is no longer viewed as a jurisdictional prerequisite to suit.

---

[8]  Notably, since 1983, only eight courts — all district courts in the Ninth Circuit — have cited *Duke v. Langdon*, and only five of those courts acknowledged the principle set forth by Plaintiffs.

Subject matter jurisdiction is not currently in question so the Court's ability to grant injunctive relief turns not on jurisdiction, but whether Plaintiffs demonstrate entitlement to relief.  However, even accepting *Duke*'s applicability — *i.e.*, the Court *could* issue injunctive relief before Plaintiffs exhausted their administrative remedies — injunctive relief would nevertheless be inappropriate because Plaintiffs have not established irreparable harm.  *See Berg v. Richmond Unified Sch. Dist.*, 528 F.2d 1208, 1211 (9th Cir. 1975) ("In a limited class of cases such as this one, in which there exist both a high probability of the claimant's ultimate success on the merits and the threat of irreparable injury of the sort which the Act seeks to avoid, a Title VII claimant may personally bring suit to maintain the status quo pending disposition by the EEOC of the underlying charge of discrimination." (citations omitted)), *vacated on other grounds*, 434 U.S. 158 (1977).

Based on the foregoing, Plaintiffs' failure to exhaust administrative remedies subjects their claims to dismissal so they cannot establish a likelihood of success on the merits.  Even if the Court disregarded this failure, the lack of irreparable harm precludes the issuance of an injunction to maintain the status quo pending the conclusion of administrative proceedings.

### b.  Title VII And ADA Claims

Having already determined that Plaintiffs are unlikely to succeed on the

merits for failure to exhaust, the Court need not analyze the Title VII and ADA claims. *See Bacon v. Woodward*, NO. 2:21-CV-0296-TOR, 2021 WL 5183059, at *3 (E.D. Wash. Nov. 8, 2021).  However, the Court notes that based on the current record, it also appears that these claims would neither succeed nor raise serious questions going to the merits.  Preliminarily, it is unclear that Plaintiffs can establish prima facie cases for Title VII religious discrimination, ADA disability discrimination, or retaliation under Title VII or the ADA.  And even if they can, they still fail to meet their ultimate burden because Hawaiian has offered compelling rebuttals at this stage in the litigation.

### i.      Title VII Religious Discrimination

The Court assumes for the purposes of deciding the Application for TRO that Plaintiffs can establish a prima facie case of religious discrimination.  When a plaintiff establishes a prima facie case, the burden shifts to the defendant "to show that it 'initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'"  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (citations omitted).

Hawaiian contends that the accommodations sought by Plaintiffs cause undue hardship because they are more than de minimis.  ECF No. 31 at 20–24.

Undue hardship results when an employer incurs "'more than a *de minimis* cost'" and although the focus is ordinarily on the conduct of the business, "an employer may also show hardship on the plaintiff's coworkers." *Opuku-Boateng v. California*, 95 F.3d 1461, 1468 (9th Cir. 1996) (footnote and citations omitted); *see also Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) ("[A]n accommodation results in undue hardship when there is more than a de minimis cost to the employer" or it "would cause more than a de minimis impact on coworkers." (citations omitted)).  Employers "may take into account the cumulative cost or burden of granting accommodations to other employees." https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited Feb. 2, 2022); *see also Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 n.15 (1977) (taking into account that many employees might require the same accommodation).

Hawaiian identifies the following burdens to establish undue hardship:  (1) the increased risk that unvaccinated employees in close quarters pose to other employees and passengers;[9] (2) the administrative burden of testing, especially

_____

[9]  Plaintiffs counter that Hawaiian allows unvaccinated and untested passengers, vendors, and employees of other airlines onto its planes each day.  ECF No. 33 at 10; ECF No. 17-1 at 9.  That its customer base and others outside of its employ are on planes daily does not undermine mitigation efforts *within its workforce* or its stated goal of protecting health and safety.  Moreover, the pertinent issue is whether Plaintiffs' requested accommodations cause undue burden, not employees'

(continued . . .)

with the current shortage of test kits; (3) the administrative challenges of revising

schedules to reincorporate unvaccinated employees with seniority requests; (4)

intervention in ongoing union grievances, which requires advanced planning and

coordination; and (5) the difficulty of scheduling unvaccinated flight crew on

international flights.[10]  ECF No. 31 at 24 (citing ECF No. 31-1 ¶¶ 19–26).  Because

(1), (2), and (5) persuasively demonstrate that accommodating Plaintiffs would

cause undue hardship, Plaintiffs have not met their burden of demonstrating a

likelihood of success on their Title VII religious discrimination claim.

---

(. . . continued)

exposure to unvaccinated and untested non-employees.  *See Together I*, __ F.
Supp. 3d at __, 2021 WL 5234394, at *12  ("Plaintiffs further contend that
defendant would not be unduly burdened because it allows unvaccinated patients
into its hospitals, and the addition of a few unvaccinated employees would not
materially alter the overall risk. . . . [But] the issue is whether granting *employees*
an accommodation from the COVID-19 vaccine would impose an undue hardship;
the vaccination status of defendant's patients or visitors is not material.").
Plaintiffs' contention is exaggerated in any event.  Notably, pursuant to the Safe
Travels Hawai'i program, passengers flying to Hawai'i from the continental United
States are subject to quarantine unless they show proof of vaccination or a negative
COVID-19 test.  https://hawaiicovid19.com/travel/ (last visited Feb. 2, 2022).  And
international travelers are subject to federal COVID-19 testing requirements to
enter the United States.  https://hawaiicovid19.com/travel/faqs/ (last visited Feb. 2,
2022); *see also* https://travel.state.gov/content/travel/en/traveladvisories/ea/
requirements-for-air-travelers-to-the-us.html (last visited Feb 2, 2022).

[10]  To the extent (3) and (4) address the burdens associated with the requested
injunctive relief, they are less relevant to the inquiry at hand, which focuses on the
burdens related to Plaintiffs' requested accommodations.

### ii.  ADA Disability Discrimination

The Court again presumes, for the purposes of evaluating the Application for TRO, that Plaintiffs can establish a prima facie case of disability discrimination. "The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)). The employer bears the burden of demonstrating undue hardship. *See id.* (citing 42 U.S.C. § 12112(b)(5)(A)). "The undue hardship standard is used to determine whether it is too onerous for a particular employer to make a specific accommodation sought by a specific employee, given the employer's size, economic circumstances, and other relevant conditions." *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001); *see also* 42 U.S.C. § 12111(10)(A) (defining "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B)").

Because Lum, Arizumi and O'Hailpin request the same accommodations for their purported disabilities as Plaintiffs do for their religious practices, the Court

32

finds that the undue hardship[11] proffered by Hawaiian is sufficiently convincing at this preliminary stage in the litigation to preclude a finding that Plaintiffs are likely to succeed on their ADA disability discrimination claim.[12]

### iii.        Retaliation — Title VII And ADA

The Court already determined that the record does not support Plaintiffs' assertion that they suffered adverse employment actions because they sought accommodations.  *See* Section II.A.1.a.  However, it bears repeating that Plaintiffs are unlikely to establish a prima facie case of retaliation under Title VII or the

---

[11]  The Court acknowledges that undue hardship is evaluated and defined differently under Title VII and the ADA.  Nevertheless, the information submitted by Hawaiian regarding the unreasonableness of Plaintiffs' proposed accommodations also addresses the ADA undue hardship standard and it reveals additional weaknesses with Plaintiffs' ADA disability discrimination claim.  ECF No. 31-1 ¶¶ 18–26.

[12]  In light of this determination, the Court finds it unnecessary to address Hawaiian's arguments regarding unpaid leave and the "direct threat" defense.  *See* ECF No. 31 at 31.  Hawaiian also disputes Plaintiffs' claim that it is liable "as a matter of law" for "a breakdown in the interactive process."  ECF No. 31 at 30; ECF No. 17-1 at 23.  "[I]f an employer receives notice and fails to engage in the interactive process in good faith, the employer will face liability '*if a reasonable accommodation would have been possible*.'"  *Snapp*, 889 F.3d at 1095 (citation omitted).  There is "no stand-alone claim for failing to engage in the interactive process."  *Id.*  Instead, "discrimination results from denying an available and reasonable accommodation."  *Id.*  "[I]f an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation."  *Id.* (citations omitted).  Hawaiian's arguments concerning undue hardship are relevant to the availability of a reasonable accommodation but a determination about the interactive process does not require resolution at this time.

ADA[13] because the adverse employment actions suffered by Plaintiffs — assuming for the purposes of this discussion that unpaid leave is an adverse employment action and not a reasonable accommodation — appear to be unconnected to their RA requests.  Indeed, the vaccine policy was established, as well as the consequences for failing to comply with the policy — *i.e.*, the adverse employment actions at issue here — *before* Plaintiffs submitted their RA requests.  ECF No. 31-1 ¶¶ 5, 7; ECF No. 1 ¶¶ 24, 27, 78, 82, 92, 97, 108, 119, 131, 145, 160, 162.  In other words, employees were subject to termination or unpaid leave for violating the policy irrespective of whether they submitted an RA request.[14]  ECF No. 31-1 ¶ 28.  And while the Court could envision a scenario where a policy serves as a pretext for retaliation for protected activity, Plaintiffs have not proffered any evidence of such pretext.

Even if Plaintiffs could establish a prima facie case, Hawaiian has offered legitimate, non-retaliatory reasons for the adverse employment actions.  *See Pardi*,

---

[13]  "To establish a prima facie case of retaliation under the ADA, an employee must show that:  (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1186–87 (9th Cir. 2003)); *see also Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (articulating the same standard for a Title VII retaliation claim).

[14]  If unvaccinated employees without RA requests were terminated or placed on unpaid leave, it would significantly undermine the retaliation claims.

34

389 F.3d at 849 ("If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action[.]" (citation omitted)).  Hawaiian confirms that Plaintiffs and other employees suffered adverse employment actions for failing to comply with the vaccine policy.  ECF No. 31 at 42 n.15; ECF No. 31-1 ¶¶ 11, 16; *see also Together Emps. v. Mass Gen. Brigham Inc.*, __ F. Supp. 3d __, 2021 WL 5234394, at *20 (D. Mass. Nov. 10, 2021) ("*Together I*") (finding that the "defendant has articulated a legitimate, non-retaliatory reason for the challenged employment action," "its policy is a neutral one of general applicability, and 'consequences for non-compliance are based on the employees' vaccination status, not whether or not they applied for an exemption (and not on their religion or disability)'").  Moreover, Hawaiian explains that its actions were intended to prevent the spread of COVID-19 in its workforce and the flying public.  ECF No. 31 at 33; *Barrington*, __ F. Supp. 3d at __, 2021 WL 4840855, at *6 n.5 ("Even if Plaintiff could establish a prima facie case of retaliation, the Defendant has already offered a non-discriminatory reason for its action — namely, to prevent the spread of COVID-19 among its workforce.").

In sum, Plaintiffs have not demonstrated a likelihood of success on the merits because they failed to exhaust their administrative remedies.  And even if

they had, they are unlikely to establish that Hawaiian discriminated or retaliated

against them under Title VII and/or the ADA.

### 3.    Balance Of Equities/Public Interest

Plaintiffs submit that an injunction will serve the public interest because

religious exercise must be protected notwithstanding the public's interest in

preventing the spread of COVID-19.[15]  ECF No. 17-1 at 30.  They also argue that

there is a public interest in eliminating disability discrimination.  *Id.* at 31.

In assessing whether Plaintiffs establish that the balance of equities tip in

their favor, "the district court has a 'duty . . . to balance the interests of all parties

and weigh the damage to each.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138

(9th Cir. 2009) (alteration in original) (citation omitted).  When an injunction's

impact "reaches beyond the parties, carrying with it a potential for public

consequences, the public interest will be relevant to whether the district court

grants the preliminary injunction."  *Id.* at 1139 (citations omitted).  "'The public

interest inquiry primarily addresses impact on non-parties rather than parties.'"

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,

752 F.3d 755, 766 (9th Cir. 2014) (citation omitted).  It also requires the Court to

"'consider whether there exists some critical public interest that would be injured

---

[15]  As already discussed, this case does not concern constitutional violations, so
Plaintiffs' continued reliance on constitutional rights is misplaced.

by the grant of preliminary relief.'"  *Cottrell*, 632 F.3d at 1138 (citation omitted);

*see Stormans*, 586 F.3d at 1139 ("'[C]ourts . . . should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction.'"

(alteration in original) (citation omitted)).

Here, the equities weigh heavily against Plaintiffs and the public interest

weighs strongly in favor of denying the requested relief.  Hawaiian implemented a

vaccine policy intended to protect its workforce and the traveling public, and to

curb the spread of COVID-19.  *Cf. Roman Cath. Diocese of Brooklyn v. Cuomo*,

592 U.S. __, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID–19 is

unquestionably a compelling interest[.]").  At this point in the pandemic, the

soundness of vaccination as a tool to slow the transmission of COVID-19 and to

prevent serious illness and death cannot be reasonably disputed.  *See Doe v. San

Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021) (finding that

"vaccines are safe and effective at preventing the spread of COVID-19, and that [a]

vaccination mandate is therefore likely to promote the health and safety of [the

affected community], as well as the broader community"); ECF No. 31-9 at 1

("Vaccines remain the best public health measure to protect people from COVID-

19, slower transmission, and reduce the likelihood of new variants emerging.").

"The COVID-19 pandemic has claimed the lives of over three quarters of a million

Americans" and the death toll increases daily.  *Doe*, 19 F.4th at 1181 (citation

omitted).  Enjoining Hawaiian from enforcing the vaccine policy would not serve the public interest, nor would "permit[ting] the interests of the many to be subordinated to the wishes or convenience of the few." *Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905).

Plaintiffs argue that Hawaiian's emphasis on safety is contradicted by the daily exposure of its employees to thousands of unvaccinated and untested individuals and untested workers.  ECF No. 33 at 19.  The fact that Hawaiian does not require its passengers to show proof of vaccination or testing as a precondition to flying is immaterial to its earnest efforts to subject its employees to a vaccination requirement intended to promote the health and safety of employees and guests alike.  And as earlier noted, passengers flying to Hawai'i are subject to the Safe Travels Hawai'i program and/or federal testing requirements, so the exposure is not nearly as potentially injurious as Plaintiffs portray it to be.  Given these circumstances, and because Plaintiffs have not shown that their interests outweigh Hawaiian's or the public's interests, the Court will not grant the TRO. *See Stormans*, 586 F.3d at 1139 ("[When] an injunction is asked which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." (alteration in original) (internal quotation marks and citation omitted)).

## CONCLUSION

For the reasons stated herein, the Court (1) DENIES Plaintiffs' Application for Temporary Restraining Order and for an Order to Show Cause Why Preliminary Injunction Should Not Issue, ECF No. 17, and (2) GRANTS Hawaiian's Application to Strike the Declaration of Frederick Reed Bates, II Attached to Plaintiffs' Reply Brief in Support of Application for Temporary Restraining Order and Preliminary Injunction, ECF No. 36.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, February 2, 2022.



Jill A. Otake
United States District Judge

Civil No. 22-00007 JAO-KJM, *O'Hailpin, et al. v. Hawaiian Airlines, Inc., et al.*; ORDER (1) DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND (2) GRANTING DEFENDANTS' APPLICATION TO STRIKE DECLARATION OF FREDERICK REED BATES, II